THE STEWART MANUFACTURING COMPANY, DEFENDANT IN ERROR, v. THE IRON CLAD MANUFACTURING COMPANY, PLAINTIFF IN ERROR.

Submitted March 31, 1902—Decided June 16, 1902.

1. In a suit upon a contract by which the defendant agreed to sell nine hundred heaters under the plaintiff's letters-patent, and to pay license fees therefor, according to a schedule of rates, plaintiff declared specially that the defendant had sold all of said heaters and had not paid therefor, adding the common counts. The proofs showed that the defendant had sold three hundred and eighty-six heaters, but failed to show that they were under the plaintiff's patent. A verdict was directed for the plaintiff for the specified royalties for these heaters and also for the lowest rate of royalty upon the five hundred and fourteen heaters not sold. *Held*, that it was error for the court to assume that the heaters that had been sold were under the plaintiff's patent, and that it was also error to include in the verdict damages for the defendant's failure to sell according to his contract.

2. The common counts will not support a verdict for damages resulting from a defendant's failure to do some particular thing which he has agreed to do unless it be the mere failure to pay money.

On error to the Circuit Court.

For the plaintiff in error, *Guild, Lum & Tamblyn.*

For the defendant in error, *Robert H. McCarter.*

The opinion of the court was delivered by

GARRISON, J.   This is a suit by the Stewart Manufacturing Company upon a contract by which the Iron Clad Manufacturing Company agreed to sell, during two years, nine hundred heaters, under the plaintiff's letters-patent, and to pay to the plaintiff license fees therefor, according to a schedule contained in the contract.   Breaches of this contract by the defendant might be either (1) its refusal to account for the license fees for the sales of heaters made under the letters-patent, or (2) its failure to sell the minimum number of heaters within the prescribed time.   In the former case the measure of damages would depend upon the size and pattern of each heater sold as per the schedule of royalties; in the latter case it would be the minimum rate of royalty upon the number of heaters agreed to be sold.

The plaintiff declared specially upon the former of these breaches, alleging the manufacture and sale by the defendant of nine hundred heaters, under the letters-patent, and the failure to pay over the royalties due thereon.   The contract and the common counts were included in the declaration. At the trial the plaintiff proved that during the two years covered by its suit the defendant had sold three hundred and eighty-six heaters, upon which, if manufactured under the plaintiff's patent, the sum of $293.70 in license fees would be due according to the table of royalties.   The plaintiff was, however, unable to prove that the heaters so sold were made under the plaintiff's patent.   A citation from the charge of the learned judge before whom the cause was tried correctly states the proof upon this point.   "As a matter of fact," he says, "they [the defendants] have sold three hundred and eighty-six heaters.   There is no proof in the case

that the heaters which they sold were heaters under the Stewart patent—no absolute proof—but [and in what follows the learned judge fell into error of law, as I conceive it] inasmuch as they were bound to sell and pay for more heaters, under the Stewart patent, than they actually sold, I think we have the right to assume that the heaters which they sold were made in pursuance and in fulfillment of their contract, and that they are therefore, in the absence of other proof, fairly to be taken as made under the Stewart patent." The judge then proceeded to add to the three hundred and eighty-six heaters charged for at royalty rates enough heaters to make up the nine hundred which the contract called for, to wit, five hundred and fourteen heaters, upon which, inasmuch as they had not been manufactured at all, the lowest royalty was charged, to wit, twenty-five cents, making $128.50, which two sums, together with interest, made the amount for which a verdict was directed for the plaintiff.

The error of law into which I conceive that the trial court fell was that of confusing the two breaches of the contract, which, as has been shown, differed not only in their essential nature and in the proof necessary to sustain them, but also in their measure of damage and in the pleading applicable to each. To charge the defendant with having sold nine hundred heaters under its contract, on each of which a specific royalty was due, did not, in the least degree, tend to charge it with having failed to sell nine hundred heaters as required by the contract. Similarly, to prove that the defendant had failed to sell nine hundred heaters (if that proof could have been made under the pleadings), did not in anywise tend to prove that the heaters which it had sold had been manufactured under the plaintiff's letters-patent. Nor is the matter helped by the presence of the common counts, each of which charges a general right based upon something that has been done, and none of which charges either a general right of recovery because of what has not been done, or a particular failure of the defendant to do some specified thing, except it be its mere failure to pay money.

The direction under review gave to the plaintiff a verdict to which each of these breaches contributed, made up, as it was, in part of royalties upon sales that had been pleaded, but not proved; and in part of damages for a breach that had been proved, but not pleaded. If error entered into either of these judicial rulings (and apparently it entered into both), the judgment below, which is an entirety, cannot stand. In any event, therefore, there must be a reversal of the judgment brought up by the writ of error.

There was a cross-writ of error sued out by the plaintiff below and argued with the defendant's writ of error. By the reversal of the judgment upon the defendant's writ there remains nothing upon which the assignments of error under the plaintiff's writ can operate. It therefore, of necessity, falls as a remedial proceeding, and in that sense it is dismissed by the court. If a question of costs be deemed still to depend upon the matters assigned by the plaintiff for the reversal of the judgment that was in his favor, we may say that we have examined the points raised upon the plaintiff's exceptions to the judge's rulings and find them not to be well taken, so that, had the case stood upon this writ alone, the judgment would have been affirmed.

The situation that results in this case from the taking of cross-writs of error suggests the question of the propriety of such second writ.

The practice of cross-assignments of errors under a single writ of error, as pointed out in the interesting note by C. S. Biddle, Esq., in 19 *N. J. L. J.* 169, is worthy of consideration in this connection.

The result is that the judgment is reversed upon the defendant's writ of error, with costs, and that the plaintiff's writ of error is dismissed, with costs to the defendant.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, GARRISON, COLLINS, FORT, GARRETSON, HENDRICKSON, PITNEY, BOGERT, ADAMS, VREDENBURGH, VOORHEES. 14.